Case for today is number 25-10840, Venture Commodities v. City of Canton et al. Mr. Romero. Good morning, Your Honors. May it please the Court. My name is Xavier Romero. I'm with Flint Connelly & Walker, and I represent Venture Commodities Incorporated, otherwise known as VCI. This matter comes before the Court on appeal from the Northern District of Georgia regarding an order dismissing VCI's complaint under Rule 12b-6. VCI comes and asks this Court to reverse that decision for two reasons. One, that it adequately pleaded a takings case against the City of Canton under three counts for a water discharge permit, the renewal of that discharge permit, and for an exaction placed upon VCI by the City. This action stems from a rainfall that happened on or about March 9th of 2023. VCI is an animal fat rendering plant, or what it does is renders certain animal materials such as fats, oils, and greases, or fog. And after it emulsifies these materials, discharges water, it had at least, into the sewer that's on its property. May I ask you a question just at the outset? So I understand suing the City of Canton. It seems like that's really your focus. But there are also claims being brought against Peppers and Hatabian. Are you suing them in their individual or in their official capacities? Because that's not clear to me. They're being sued in their capacities individually for going outside the bounds of their positions. They have abused their ability to use their leadership positions in the City of Canton. So our position was that qualified immunity does not attach to them for that reason. And it didn't seem that the District Court even addressed that issue. And so we're really challenging the District Court's order that ignored our exaction taking and failed to find a property interest that we've claimed in our complaints. Can I ask you, I'm sure you'll get into this a lot more, but a clarifying point about your argument. Is your argument that the exaction cases mean that you don't have to identify a property interest to state an exaction takings claim or that the plaintiff always has a property interest and a permit? I think the moniker of exaction taking in the context of an exaction is a little bit misleading because the exaction really exists in what the Supreme Court has called an out-and-out scheme for extortion. So the conditions that are placed by the municipality here are really the focus. Whether there's a property interest or not, it seems that the City here and in those other cases, in Nolan, Dolan, and Sheets most recently, all seem to just recognize that there is at least an interest or else the City wouldn't be able to regulate it. But the really big issue... But those are cases in which there was an undoubted property interest, right? Somebody had, for example, an interest in land that they wanted to do something on or expand or build or the like, right? Yes, Your Honor. But I will say in Sheets, the issue was not so much the land but the building permit to build a prefab house on there and that the nexus that was not met there was a tax condition on the amount of traffic nearby. And so the property interest there was a permit just like here. So is your answer to my question that because there's a property interest and a permit, another sort of property interest like in real property is not required? No, Your Honor. My suggestion to you is that there is a property interest here. We have a property interest in the permit itself. Okay. And that that's sufficient for an exaction takings claim. It is, but also that the exaction analysis really turns on the conditions placed on a person pursuing such a permit. That the conditions there are what create the exaction cause of action. So when a municipality or state government asks too much of the resident or in case the citizen here, VCI, that's not substantially connected to that, not properly connected, that that creates the cause of action for the exaction taking. On that point, the complaint doesn't, and maybe it doesn't need to, but the complaint doesn't specify what the conditions were except for having to clean out the system. That would be the most egregious of the conditions, yes, Your Honor. And that's part of the problem here. But if the city thought that Venture was responsible for the clogging, would that not be a rational condition? It would be. And the point of the complaint is that the city understood that there was a requirement for them to go find out why they should deny and revoke the permit. They refused to do that. And when VCI repeatedly asked them, how are we in noncompliance with the city ordinance, they refused to answer. In fact, Mr. Hatabian even said at one point in response to the request for what and what measure they are not compliant, he said we are not going to tell you. That's on, that's in the complaint as well. It says your engineer should be able to review the requirements of the permit and develop your own remediation plan. They refused to do that. But the city here acted in coordination to launch a campaign to suffocate basically this business and remove them through multiple measures by revoking this permit without entertaining the city ordinance that it knew of. On March 15th, just a couple of days after the sewer had backed up, there was an email from Billy Peppers, the city manager, to the mayor of Canton where he acknowledges that there is an ordinance that places this under my control for review. That's paragraph 29 of our complaint. He also said before any investigation had been done, he said I will likely issue a shutdown order for the business, not just the permit, but he says for the business, and schedule a hearing to either modify or revoke the discharge permit. So he understood that there was in fact an ordinance on place that requires him to find one of 13 enumerated factors that are in the ordinance for him to then have a basis to suspend, deny, or revoke a discharge permit. Can I ask you to pivot to what I would call the pure takings claims as opposed to the exaction claim? Because your first two claims are pure takings claims, right? Yes, Your Honor. I understood the complaint correctly in that score. The federal courts have generally said that a property interest that is recognized for due process purposes is not necessarily the same property interest recognized for takings clause purposes. Have the Georgia courts spoken on that issue? I have not been able to find a case that delineates what that other scenario is that differentiates a Fifth Amendment property interest from a due process interest. Well, one gets you due process. It gets you procedures before the interest can be taken away. The other one gets you money. It gets you compensation for the value of whatever interest was taken by the government. And so you have a case, Gold Rush 2, in Georgia, which recognizes a property interest in a permit or a license that can only be terminated for enumerated reasons or for cause. But that was exclusively a due process case. So I'm wondering what in Georgia law provides that a permit that you don't have a right to renew on your own gives you a property interest that's protected by the takings clause. The basis of our complaint and our response in the motion and appeal rests on Gold Rush 2. And Gold Rush 2 does exist in the context of a due process claim. It does say there's a property interest vested right, actually, in the permit when there are enumerated provisions for revoking that, just like there is in the City of Canton ordinances. Our position is that that due process property interest must also vest a Fifth Amendment taking as well, a Fifth Amendment property interest that can be compensable. And I think a lot of this also turns on— Why is that so? On the 2019 Supreme Court case in Nick v. The Township of Scott. It does not definitively say one way or the other that the 14th Amendment creates a Fifth Amendment property right. But it does say that now residents of a municipality can bring a Fifth Amendment takings claim immediately without having to go through state administrative remedies. Because that's only a 2019 case, I don't think the courts have had an opportunity to address that the 14th Amendment or the Due Process Clause's umbrella of protection for the processes must obviously cover the interest below itself. If a property interest exists under a Due Process Clause, it must also exist for the Fifth Amendment purposes of having their property taken. And so once that property interest vests, because the City has said you have this right in this thing and it can only be taken away for these 13 reasons, then it also must be compensable. Here, the City of Kansas— Okay, I understand the argument. How does that extend to the non-renewal? Because the permit didn't give your client a right of renewal. It gave your client protection within the time period of the permit, but it didn't say you have a right to renew. So how is the non-renewal a taking? Your Honor anticipated my next sentence. The ordinance is inclusive, not exclusive. So it says as long as you follow these affluent limitations, you have the right to this permit and the City can only deny or suspend or revoke, as those three different verbs in it, on the finding of these 13 enumerated conditions. So you're saying that the ordinance does give you a right of sorts to renew? Yes. That's a protected property interest for taking purposes? Yes, Your Honor. So long as the other conditions, the other 13 enumerated conditions for revoking or denying that have not been met and there's been no finding of that, then you do have the right to it. There is nothing that says otherwise in this ordinance. And VCI has been operating under these permits for over 20 years now. Their first one, I think, was August 7, 2003, and have had no issues renewing them ever since. Have you found any? I haven't been able to find any. Have you found any cases going any way whatsoever with a takings claim on the non-renewal of a permit as opposed to the termination of a permit? I have not been able to. But I would also suggest that the exaction that the city conducted in refusing to tell VCI what the noncompliance was, and even worse, leading them along to make them spend the money and time to clean the city sewer for the benefit of all people instead of just for VCI, continued through the renewal as well. Right, but that can't, I mean, I know the facts are interrelated, but that can't save your renewal claim. The renewal claim is a pure takings claim, not an exaction claim. Yes, Your Honor. I do think that the claims are factually and legally interrelated because the city intended to drag out this revocation process through the expiration and then stated that its denial of the renewal was based not on the enumerated provisions in the ordinance but on this deadline that they hadn't submitted the renewal within 60 days of the deadline. But the ordinance doesn't require that. What the ordinance does require is that existing users have to submit an application within 60 days of being notified by the city that a permit is required. There's no evidence that that notification occurred. But doesn't the permit have an end date? It does have a durational date. There's five years per duration. So your client's under no obligation to seek renewal when the time period is coming to an end? Your Honor, I see my time has expired. May I answer and conclude? Sure. Thank you. In this case, Your Honor, I don't know that that's even relevant because our client, BCI, submitted the application for renewal on October 31st when the deadline is November 30th. And so on a Rule 12b-6 context where our facts are deemed to be true, we've submitted to the proper authorities under the ordinances to satisfy that requirement. All right. Thank you very much. You've saved your time for rebuttal, Mr. Romero. Thank you, Your Honor. Mr. Balch. Thank you, Judge. Good morning. Chris Balch. I have the privilege of representing the City of Canton, Billy Peppers, and David Hatabia this morning. The fundamental problem the City has with this case, if I can just put it in a direct response to Judge Jordan's question just a moment ago, is that the Due Process Clause uses the word property in two very different contexts in the same paragraph. There is a property interest under Due Process, but there is only a protection for a taking for private property. And private property has always been considered, since 1945, to be those kinds of things that you can divest independently of any kind of government. Hasn't the Georgia Supreme Court in the Gold Rush II case, hasn't the Georgia Supreme Court said that there is a property interest in permits where there are these sorts of protections like what we have here? For due process purposes, yes, Judge Kidd, that's correct. But in Sections 9 and 10 of Gold Rush II, particularly 696 to 698, the Court addresses directly the takings claims that are also part of Gold Rush II and rejects those as not being sufficiently vested to satisfy the private property interest defined under the Fifth Amendment for purposes of a taking. So even if you have a due process right, which they abandoned by their own admissions from the first complaint to the second, that goes away and all we're dealing now is, is there a property that is subject to a takings claim? This Court in Gibbons v. Department of Corrections Let's go back there because the Supreme Court, Georgia Supreme Court, has said that there is a property interest. Now we get into Nolan Dolan land, don't we? No, sir. Why not? Not because the property interest for due process purposes does not satisfy the vesting requirement that Georgia Supreme Court has said is necessary to get all the way to a takings claim. Section 9 deals directly with the first part of that question. Section 10 of the opinion You do not have to bifurcate that because for a takings claim, we're relying on state law to identify the property interest while we rely on state law to identify whether there is a takings claim. Because the interests that are being protected by due process are different than the interests that are being protected by taking. Correct. So if those interests are different, then the property interests that are being discussed are different. They're not the same thing. The Supreme Court in Ruckelshaus, relying on General Motors v. United States in 1945, describes specifically what is required in a property interest for purposes of a taking. That is the kind of interest that we have in real estate or in personality that we can divest at our own choice. Timber, crops, intellectual property, wildlife that you raise for commercial purposes. All of those things are things that you and I can sell at arm's length and bargain for without the government being involved in any way in the transaction or in the conversation. A permit is only divestible if that is sellable from one party to another. If the government says that's okay. That means there's not the unique and individual control that Blackstone talks about in his commentaries that is the bedrock of a property interest or a private property interest subject to a takings clause case. Where the distinction here that plaintiffs continually miss is that very important distinction between those two different types of property interests. I may have a contractual property interest with a right of continuing employment, but that does not mean that if I lose that job, I have a takings claim against the public employer for that contract. The same thing happens with permits. The Supreme Court of Georgia has clearly stated in Gold Rush II that there may be vested rights under the due process rights for purposes of what process might be due, but those claims for due process are not present in this case anymore. The only thing that is present is, is there a cognizable and recognized property interest, private property interest that is subject to a taking? And the plaintiffs want to jump through that and pass that hurdle, which the Supreme Court articulated in Ruckelshaus in 1984 and this court then cited to in Givens as a threshold inquiry to whether or not a takings claim is ever even stated. Why, I understand your position on the takings claims. Yes, sir. Tell me why their exaction claim in count three doesn't survive your Rule 12b6 motion. Because they have, you're talking about private property. They have their company. They have their land. They have their business. That's not government given. That's no different than in the Supreme Court cases where a landowner wanted to get a permit to do something and the government exacted unreasonable, unconstitutional conditions. Their claim, which we have to accept for now, is that there were onerous and unreasonable conditions placed on the continuation of the permit. Why doesn't that claim survive? Particularly given that the district court didn't address it. The district court, I think, did what Judge Boley was supposed to do and determine first whether there's even a property interest stated. The only property interest they allege that exists is the permit. Now, to directly address your question, Judge Jordan, the business continues to operate by the admissions and the complaint. They continue to do the same thing they've been doing, albeit at a more expensive rate. But they had to use their resources to address the demand from the city that they remediate this sewer problem, correct? That was one of the things that was asked of. I'm not sure if it was ever done, Judge. All right. So they had to use their resources to address this demand that itself was, according to them, at least not articulated as being related to the conditions in the permit, which they have identified as their property interest. Okay. There's a disconnect between what they say and – well, let me try to answer your question slightly differently. There is an outfall pipe that runs from their business across their property to the city's sewer line in the street. It is not clear from their pleadings where the clog occurred. There's no way to know whether it's in the outfall pipe that is on their property and, therefore, they own, or if it's only in the city's sewer system. And according to their pleadings, the city also did not make that determination as to the source of the clog, right? I think that's correct, yes. So then from their perspective, what is the relationship between what the city demanded from them, from their own resources, and the revocation of this permit? The best way I can answer your question, Your Honor, is to provide personal experience in a clogged sewer line in my house. The city of Atlanta demanded that we have a certification from a qualified plumber, a licensed plumber, that the sewer pipe that was our responsibility, that is before it gets to the right-of-way, that that pipe was clean before they would come out and investigate if the problem was on their side of the street or not. There is no allegation one way or the other whether there was ever any investigation by VCI on their own pipe on their own dirt. So we don't know from the pleadings or otherwise where any of this occurred. And we're stuck with what they don't say as much as with what they say in the complaint about how these two things are connected. The question of whether a condition on a permit could be unconstitutional of its own self without an impact to an underlying fee is simply not answered anywhere in the law. But here, but look at, think about a case like Coons. In Coons, the plaintiff was a landowner who wanted to develop his property in a certain way. Sir. He needed a permit to be able to do that and the relevant district authority had the power to grant or deny the permit. It imposed certain conditions which were alleged to be onerous, improper, unconstitutional. If you compare the landowner in Coons with Venture here, they both own something that is not given to them by the government. The landowner had his real property in Coons and here Venture had its business, including the land on which it sat, the company's business, et cetera, et cetera. They're both seeking a permit and both claim that the government authorities are exacting unconstitutional conditions from them. Where's the difference between Coons and this case on the exaction claim? I understand your argument about the pure takings claim. Yes, sir. But on the exaction claim, what's the difference between Coons and this case? There is no allegation in this complaint anywhere that says that the underlying fee is burdened unnecessarily by the city's conditions on the permit. There is no assertion in the complaint and there was no argument in the district court, there is no argument in this court that the underlying real property is unnecessarily burdened. The only property interest Mr. Romero just referred to in his argument with respect to the exaction claim by itself is in the permit, not in the underlying fee. You have to have something that you allege and Iqbal and Twombly are very clear that we no longer just get to assume facts that are in the four corners of the complaint. So there is no allegation in the amended complaint that says we can't use our... And functionally that would be a Penn Central case anyway, Judge. It's not even going to reach to an exaction because it's whether or not you can use your property to its effective maximum economic benefit. I don't think that's the rule in cases like Coons. I don't think that's a requirement. It may help you with regard to what damages you can recover, but I thought that cases like Coons simply require and address whether or not the government entity is leveraging its legitimate interest to pursue governmental ends that lack an essential nexus and rough proportionality to those impacts. Isn't that the question on the exaction side? No, sir. It's not, Judge. It's not. Because even in the exaction cases where you're talking about Nolan, Dolan, Coons, Sheets, what have you, every one of those cases there was some impact to the developability or the usability of the property for its intended economic purpose that was thwarted by the additional conditions established by the governmental entity. That is not this claim. This claim simply says our permit was impacted. First it was revoked. Then it was not renewed or a new one was not granted. Because they wanted us to do too much, that's the only property interest they articulate throughout this complaint, no matter how long it is. And everything they say about that property interest is a due process right. Well, what if they had, hypothetically, what if they had alleged that the denial of the permit or the revocation of the permit directly impacts their ability to use their property for the way in which they intend to receive an economic benefit? Would that cure the problem? No, ma'am. I don't think so. It would just have changed the procedural posture of our 12B6 motion. And instead of focusing solely on whether or not there's a cognizable property interest, we would also attack whether or not they could even get to discovery on the exaction claims because of whether or not what the city was asking for was reasonable or not. So, based on the allegations that they have made. So, even if you cured it, even if the district court had said, I'll give you leave to further amend your complaint and articulate better what you're supposed to have done, it doesn't change the analysis because there's nothing that they can say that says that the property interest that they're relying on survives the definition established by the Supreme Court of Georgia in Gold Rush II in Sections 9 and 10, or that it is somehow, that the exaction pieces are somehow usurping the underlying analysis that's been traditionally required since Ruckelshaus. Should we certify to the Georgia Supreme Court whether or not there's a protectable property interest for takings clause purposes and this sort of a permit? No, sir, because the question is answered in Gold Rush II. It's 696 to 698. The Georgia Supreme Court, and then six months later, and I'm going to butcher this name, forgive me, this case name is Q-U-E-T-G-L-E-S, 268-619. Justice Thompson, in that case, in September of... Forgive me, I'm sorry. September of 97, shorthands the whole discussion from Gold Rush II and simply says, without a vested right related to property, there is no takings claim. So the Georgia Supreme Court has said twice, both in 1997, and has not articulated or said anything since then, of changing that outcome. That if the right that is claimed to be vested does not apply directly to a property interest, there is no ability to take a state of takings claim. We'd ask you to affirm, Judge Golay. Thank you for your time. Thank you very much. Okay, Mr. Romero, he says Gold Rush II hurts you in some ways. So what's your response? I think the initial establishment that a property right exists, whether it's for the due process claim or not, creates a property interest, then a vested property interest in a Fifth Amendment context as well. But he says that Gold Rush goes on to discuss and reject a takings claim in that same scenario. I will submit that that case does say that as it pertains to the renewal of the permit, but the renewal was really the prime, I think, focus of that case, not the actual suspension there. And as I alluded to earlier, the exaction here kind of extends or blends these two takings because of the way they purposely ran out the clock on the duration. But I also wanted to mention or respond to my colleague's reference to General Motors. The Supreme Court decision in 1945 there did refer to a one-year lease. The plaintiff in that case wasn't even the owner of the property. They were a tenant who sublet to the government in that point. It was a strict termination, excuse me, a strict duration. Sure, but a lease is a different property. Not all property interests are created equally, and a lease is different than a permit for the operation of a sewer, for operation within a sewer system. It's a leasehold interest, which is a real property interest. It does. Just like the sewer permit requires BCI to be able to use what's on its real property. And, in fact, I want to address two quick things here that the paragraphs 13 and 14 of the complaint do in fact state the necessity for that water discharge. And in contradiction to what my colleague just said, I believe it's paragraph 64 of the complaint, no, excuse me, 68, states that we have had to truck water off in replacement to that necessity of discharging into the sewer. And the last thing I'll say, Your Honors, I see my time is up, is that the complaint also specifically noted that BCI and its contractor EMS did determine that the fault of the clog was from the Luna Bakery, which is right up the street from them. There are no grease traps that they use in the bakery, and that they found an oil and flour mix consistent with a bakery. How far into the process was that determination made? That determination was made after BCI was required to clean the sewer. That's how they found out that the source was, in fact, the Luna Bakery. And they reported this to the city. That's also in the complaint. When BCI reported that they were not, affirmatively, the cause of the blockage of the sewer, the city immediately told them to stop all work on the sewer system. And by implication, if BCI determined that the bakery was the source, that meant that the blockage was not on the portion, BCI's portion of the pipe leading to the sewer? I believe there's a juncture. There's a map in one of the exhibits that show the sewer line, and it doesn't necessarily designate where La Luna is. It can be cross-referenced with Google Maps or something like that. But you do see where BCI is, the length of the pipe, and where the tributary system from the sewer then joins. And I believe it was at the juncture where those two parts combined, where the clog occurred, which backed up then into BCI's property and caused this obstruction in their ability to do the essential function of their business, which is render this fog material in discharge water. And for that, Your Honors, because the district court relied on cases outside of the state of Georgia to determine whether it was a property interest, and that, as George Jordan noted, that at least the exaction claim should survive, we asked this court to reverse the Northern District of Georgia. Yeah, don't take my comments to be any sort of predetermination on anything. Not at all, Your Honor. All right, thank you both very much. It's been very helpful. Thank you.